J-A09028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ROBERT MOSNE AND JEAN MOSNE, HIS WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| HERITAGE FOOD OF HAZLETON, LLC | |
| Appellant | No. 1397 MDA 2015 |

Appeal from the Order Entered July 20, 2015
in the Court of Common Pleas of Luzerne County
Civil Division at No(s): 2014-11116

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED MAY 23, 2016**

Heritage Food of Hazelton, LLC ("Appellant") appeals the Luzerne County Court of Common Pleas' July 20, 2015 order denying Appellant's petition to open default judgment.  After careful review, we affirm.

On January 24, 2014, Robert Mosne sustained injuries when he slipped on ice on an inclined surface at Appellant's place of business, a grocery store in Hazleton, Pennsylvania.[1]  On March 26, 2014, counsel for Appellees[2] sent

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The grocery store ceased operations during the pendency of this lawsuit, although it was still in business as of June 19, 2015, when its general manager was deposed in this matter.

a letter informing Appellant that he had been retained to represent Appellees in relation to the January 24, 2014 incident. On August 20, 2014, Appellees' counsel sent a second letter[3] advising that Appellees intended to file suit within 30 days absent a response from Appellant's insurance carrier. Appellant acknowledges receipt of both letters, which Appellant claims its general manager[4] forwarded to its insurance broker.[5]

On September 26, 2014, Appellees filed their Complaint, a copy of which the Luzerne County Sheriff's Department served at Appellant's place of business on October 1, 2014. Included with the Complaint was a Notice

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

[2] Appellee's wife, Jean Mosne, was also a plaintiff in the underlying matter and is an Appellee in the instant appeal. Robert and Jean Mosne are collectively referred to herein as "Appellees".

[3] The second letter was sent to Hered, LLC, the company that owned the property on which the Appellant's grocery store was located. Both Appellant and Hered, LLC were owned by the same individuals.

[4] Iftekhar Biplob had been Appellant's general manager for five years. **See** Deposition of Iftekhar Biplob, June 19, 2015, p. 6. Mr. Biplob has a bachelor's degree in management and had previously worked as an assistant controller in a hotel in New York City. Mr. Biplob attended to all Appellant's insurance concerns.

[5] Appellant did not forward the claim to their insurer. Instead, Appellant explained its "procedure was to forward every claim to Appellant's insurance broker, Gary Burdick of GDB & Associates, LLC, who would then handle the claim on behalf of Appellant." Appellant's Brief, p. 6; **see also** Deposition of Iftekhar Biplob, June 19, 2015, p. 7. Appellant further explained that its general manager "always worked with and through the insurance broker directly and did not work with the insurer." **Id.** at 7; **see also** Deposition of Iftekhar Biplob, June 19, 2015, pp. 7-8.

to Defend.[6]  Appellant's general manager forwarded the Complaint to Appellant's insurance broker.

On January 3, 2015, Appellant was served with Appellees' Notice of Intent to Take Default Judgment pursuant to Pa.R.C.P. 237.1.[7]  Appellant's

---

[6] The Complaint included the following notice to defend text in both English and Spanish:

### NOTICE

YOU HAVE BEEN SUED IN COURT.

If you wish to defend against the claim set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.  YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER, IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED RATE OR NO FEE.

**See** Notice to Defend, filed September 26, 2014 (legal services information omitted).

[7] The notice Appellant received reads as follows:

### IMPORTANT NOTICE

TO:          Heritage Food of Hazelton, LLC

*(Footnote Continued Next Page)*

general manager promptly forwarded each pleading to Appellant's insurance broker via email.[8]

On January 23, 2015, Appellees filed a praecipe for default judgment. Also on January 23, 2015, the Luzerne County Court of Common Pleas Prothonotary entered a default judgment and mailed Appellant a copy

_(Footnote Continued)_ ───────────

DATE:                  January 2, 2015

**YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO ENTER A WRITTEN APPEARANCE PERSONALLY OR BY AN ATTORNEY AND FILE IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. UNLESS YOU ACT WITHIN TEN (10) DAYS FROM THE DATE OF THIS NOTICE, A JUDGMENT MAY BE ENTERED AGAINST YOU WITHOUT A HEARING AND YOU MAY LOSE PROPERTY OR OTHER IMPORTANT RIGHTS.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

Notice of Intent to Take Default Judgment, served on January 3, 2015 (legal services information omitted).

[8] A dispute exists as to whether the general manager actually attached all pleadings and notices to his emails to the broker. We need not address this question, however, because even had he attached the notices, the result of this case would not change for the reasons discussed **_infra_**.

thereof.[9]  Appellant received notice of the entry of the default judgment on January 29, 2015.  Appellant's general manager wrote another email to the insurance broker explaining that Appellant had received another notice, but did not forward the notice.

Forty-six (46) days later, on March 16, 2015, Appellant improperly electronically filed a petition to open default judgment.[10]  Appellant properly filed the petition to open judgment in person on April 9, 2015.  Each petition claimed Appellant operated a supermarket, was not litigation savvy, and did not forward the default notice to its insurance broker because it did not understand the importance of the default notice.  On July 20, 2015, following oral argument, the trial court denied Appellant's petition to open the default judgment.

Appellant timely filed its notice of appeal on August 14, 2015.  The trial court did not order, and Appellant did not file, a Pa.R.A.P. 1925(b)

---

[9] The notice of entry of default judgment forwarded to Appellant by the Prothonotary of the Luzerne County Court of Common Pleas reads as follows:

> AS PRESCRIBED BY LAW, YOU ARE NOTIFIED THAT A JUDGMENT DEFAULT HAS BEEN FILED IN THIS OFFICE AGAINST YOU BY ROBERT MOSNE, PLAINTIFF, CREDITOR, ETC. IN THE AMOUNT OF TO BE ASSESSED ON January 23, 2015.

Notice of Entry of Default Judgment, mailed January 23, 2015.

[10] Appellant filed this petition electronically, in violation of the local rules of Luzerne County Court of Common Pleas, which require petitions to open default judgment to be filed by hand delivery.

statement of matters complained of on appeal. The trial court entered its

Pa.R.A.P. 1925(a) opinion on November 18, 2015.

Appellant raises the following five (5) claims for review:

1. Whether the [t]rial [c]ourt erred and/or abused its discretion when it denied [Appellant's] Petition to Open Default Judgment pursuant to Pa.R.Civ.P. 237.3 and established case law where the evidence established that [Appellant] met the following three requirements: (1) a prompt filing of a petition to open the default judgment; (2) a meritorious defense; and (3) a reasonable excuse or explanation for their failure to file a responsive pleading?

2. Whether the [t]rial [c]ourt erred and/or abused its discretion when it denied [Appellant's] Petition to Open Default Judgment because, in reaching its conclusion that [Appellant's] reasons for delay did not excuse the delay and that the Petition was not filed promptly, the [c]ourt exercised judgment which is manifestly unreasonable under the circumstances?

3. Whether the [t]rial [c]ourt erred and/or abused its discretion when it denied [Appellant's] Petition to Open Default Judgment because the [c]ourt's analysis regarding the promptness requirement is at odds with modern jurisprudence and the typical timeline associated with litigation of civil matters in the state court system from inception through trial?

4. Whether the [t]rial [c]ourt erred and/or abused its discretion when it denied [Appellant's] Petition to Open Default Judgment where equity clearly favored opening the judgment?

5. Whether the [t]rial [c]ourt erred and/or abused its discretion when it denied [Appellant's] Petition to Open Default Judgment where [Appellees] did not suffer any prejudice based on the delay between the entry of default judgment and the filing of the Petition to Open Default Judgment?

Appellant's Brief, pp. 4-5.

The decision to grant or deny a petition to open a default judgment is

a matter of judicial discretion. *Schultz v. Erie Ins. Exchange*, 477 A.2d

471 (Pa.1984). "A petition to open a default judgment is an appeal to the equitable powers of the court. The decision to grant or deny a petition to open a default judgment is within the sound discretion of the trial court, and we will not overturn that decision absent a manifest abuse of discretion or error of law." *Graziani v. Randolph*, 856 A.2d 1212, 1223 (Pa.Super.2004).

This Court's standard of review regarding the denial of a petition to open or strike a default judgment requires that the Court

> examine the entire record for any abuse of discretion, reversing only where the trial court's findings are inconsistent with the clear equities of the case. Moreover, this Court must determine whether there are equitable considerations which require that a defendant, against whom a default judgment has been entered, receive an opportunity to have the case decided on the merits. Where the trial court's analysis was premised upon record evidence, where its findings of fact were deductions from other facts, a pure result of reasoning, and where the trial court made no credibility determinations, this Court may draw its own inferences and arrive at its own conclusions. Finally, where the equities warrant opening a default judgment, this Court will not hesitate to find an abuse of discretion.

*Reid v. Boohar*, 856 A.2d 156, 159 (Pa.Super.2004).

Pennsylvania's Rules of Civil Procedure allow for the entry of default judgments as follows:

> **Rule 1037. Judgment Upon Default or Admission. Assessment of Damages**
>
> . . .
>
> (b) The prothonotary, on praecipe of the plaintiff, shall enter judgment against the defendant for failure to file within the required time a pleading to a complaint which contains a notice

to defend or, except as provided by subdivision (d), for any relief admitted to be due by the defendant's pleadings.

(1) The prothonotary shall assess damages for the amount to which the plaintiff is entitled if it is a sum certain or which can be made certain by computation, but if it is not, the damages shall be assessed at a trial at which the issues shall be limited to the amount of the damages.

. . .

(c) In all cases, the court, on motion of a party, may enter an appropriate judgment against a party upon default or admission.

Pa.R.C.P. 1037.  The Rules further provide:

**Rule 237.1 Notice of Praecipe for Entry of Judgment of Non Pros for Failure to File Complaint or by Default for Failure to Plead**

. . .

(2) No judgment of non pros for failure to file a complaint or by default for failure to plead shall be entered by the prothonotary unless the praecipe for entry includes a certification that a written notice of intention to file the praecipe was mailed or delivered

. . .

(ii) in the case of a judgment by default, after the failure to plead to a complaint and at least ten days prior to the date of the filing of the praecipe to the party against whom judgment is to be entered and to the party's attorney of record, if any.

Pa.R.C.P. 237.1.

"Generally speaking, a default judgment may be opened if the moving party has (1) promptly filed a petition to open the default judgment, (2) provided a reasonable excuse or explanation for failing to file a responsive

pleading, and (3) pleaded a meritorious defense to the allegations contained in the complaint." ***Myers v. Wells Fargo Bank, N.A.***, 986 A.2d 171, 175-76 (Pa.Super.2009); ***see also Reid***, 856 A.2d at 160.[11] "[A]ll three factors must appear before a court is justified in opening a default judgment." ***McCoy v. Pub. Acceptance Corp.***, 305 A.2d 698, 700 (Pa.1973). Further, a trial court cannot open a default judgment based on the "equities" of the case where the defendant fails to establish all three of the required criteria. ***Seeger v. First Union Nat. Bank***, 836 A.2d 163, 167 (Pa.Super.2003).

The third prong, a meritorious defense to the underlying matter, is not at issue in this matter. For purposes of a petition to open a default judgment, "[t]he requirement of a meritorious defense is only that a defense must be pleaded that if proved at trial would justify relief." ***Seeger***, 836 A.2d at 166. "The defense does not have to prove every element of its defense[;] however, it must set forth the defense in precise, specific and clear terms." ***Id.***

Here, Appellant's petition to open default judgment alleged various defenses to the underlying action including comparative negligence, lack of notice, assumption of the risk, open and obvious risk, choice of ways, and

---

[11] Pennsylvania's Rules of Civil Procedure provide that, where a party files a petition for relief from a default judgment that attaches a proposed answer that states a meritorious defense within 10 days of the entry of the default judgment on the docket, the trial court must open the judgment. ***See*** Pa.R.C.P. No. 237.3. In the case *sub judice*, however, Appellant concedes it failed to file its petition to open default judgment within 10 days.

trivial defect. Any of these pleaded defenses amount to a "meritorious" defense to a slip and fall claim for the purpose of satisfying the third prong required for a petition to open a default judgment.

The instant matter instead hinges on the first prong, whether Appellant promptly filed its petition to open default judgment, which necessarily depends on the second prong, Appellant's excuse for the delay.

With regard to the first prong, whether the petition was timely filed, this Court has noted the following:

> The timeliness of a petition to open judgment is measured from the date that notice of the entry of the default judgment is received.

*US Bank N.A. v. Mallory*, 982 A.2d 986, 995 (Pa.Super.2009) (some internal quotations omitted).

Pennsylvania law does not establish a specific period of time within which a party may promptly file a petition to open or strike a default judgment. *US Bank, N.A.*, 982 A.2d at 995. This Court has suggested that the Court should consider the length of time from the date that notice of the entry of judgment was received and the reason for the delay in filing the petition. *Flynn v. Casa Di Bertacchi Corp.*, 674 A.2d 1099, 1102 (Pa.Super.1996). Previous decisions have determined a fourteen-day delay to be timely in one instance, *Alba v. Urology Associates of Kingston*, 598 A.2d 57 (Pa.Super.1991), but that a seventeen-day delay was untimely in another. *McCoy v. Public Acceptance Corp. et al.,* 305 A.2d 698

(Pa.1973) ("Although such a delay might not be considered excessive under certain circumstances, filing the petition to open after two and one-half weeks can hardly be considered prompt."); *see also Flynn v. Casa Di Bertacchi Corp.*, 674 A.2d 1099, 1102 (Pa.Super.1996) (finding that, given defendants' previous inactivity, the trial court was generous in concluding that a seventeen-day delay between notice of default judgment and the filing of a petition to open judgment was prompt). Generally, the Court has been willing to accept a delay of around one month or less. *See Duckson v. Wee Wheelers, Inc.*, 620 A.2d 1206 (Pa.Super.1993) (filing prompt only one day after entry of default judgment); *Reid*, *supra* (filing of petition prompt one month after entry of default judgment); *Penneys v. Richard Kastner Co., Inc.*, 443 A.2d 353 (Pa.Super.1982) (thirty-three day delay considered prompt). Beyond that, however, the Court has not been so patient, especially in reference to sophisticated defendants. *See DiNardo v. Central Penn Air Services, Inc.*, 516 A.2d 1187 (Pa.Super.1986) (three-month delay not prompt for sophisticated entity).

Here, Appellant acknowledges it received the notice of entry of default judgment on January 29, 2015. Appellant's general manager acknowledged he understood the notice or at least understood that it was important. *See* Deposition of Iftekhar Biplob, June 19, 2015, pp. 52-54. Despite knowledge of the existing default judgment entered against it, Appellant did not

attempt to file its petition to open judgment until 46 days later, on March 16, 2015.[12]  Our case law indicates this period is too long for a corporate defendant.  **See DiNardo**, **supra**.  Accordingly, Appellant fails to prove the first prong – that it promptly filed its petition to open default judgment.  This failure is fatal to Appellant's petition to open judgment.

Even assuming, however, that it timely filed its petition to open the default judgment, Appellant still failed to argue an adequate excuse for its delay.

"Whether an excuse [for delay in filing a petition to open a default judgment] is legitimate is not easily answered and depends upon the specific circumstances of the case."  **Seeger**, 836 A.2d at 166.  "Excusable negligence must establish an oversight rather than a deliberate decision not to defend."  **Id.** at 167.  "[U]nacceptable mistakes involve attorney carelessness or dilatoriness, a failure to act by one who knows its implications, or a deliberate decision not to defend.  Acceptable mistakes involve the misplacement or handling of papers through no fault of the appellant or its attorney, or a clerical oversight resulting in an attorney's being unaware of the suit from the outset."  **Keystone Boiler Works, Inc. v. Combustion & Energy Corp.**, 439 A.2d 792, 794 (Pa.Super.1982).

_____

[12] In the interest of fairness, we will not punish Appellant for counsel's lack of knowledge of Luzerne County Court of Common Please local rules and will consider March 16, 2015 as the filing date for the purpose of the prompt filing analysis.

> Generally speaking, a default attributable to a defendant's justifiable belief that his legal interests are being protected by his insurance company is excusable. However, if the insured fails to inquire of the insurer as to the status of the case after events have occurred which should have reasonably alerted the insured to a possible problem, the insured is precluded from asserting a *justifiable* belief that its interests were being protected.

*Duckson*, 620 A.2d at 1210 (internal citation omitted) (emphasis in original).

Furthermore, regarding the opening of default judgments, this Court makes a distinction between laypersons and corporate defendants with the means to monitor legal claims. In *DiNardo v. Central Penn Air Services, Inc.*, *supra*, a corporate defendant averred its inaction (3-month delay) resulted from relying on its insurer to represent its legal interests. The Court found "that appellee did not act in a manner which would enable it to justifiably rely upon legal representation by its insurance company." *DiNardo*, 516 A.2d at 1191. As the Court explained:

> Appellee's failure to answer the complaint was not due simply to the failure of its insurance company, but also to [Appellee's] failure to seek reassurances that actions were being taken on its behalf after events had occurred which should have reasonably alerted it that a problem existed.

*Id.*

In *Flynn v. Casa Di Bertacchi Corp.*, *supra*, the appellant explained its 17-day delay in filing a petition to open a default judgment by likening itself to the appellant in *Duckson*, in which case this Court found reliance on an insurer for representation an acceptable excuse for delay in filing a

petition to open a default judgment. Initially, the Court distinguished **Duckson** by noting that **Duckson** involved an unsophisticated layperson defendant, not a corporation.[13] **Flynn**, 674 A.2d at 1103. The Court further stated that corporate entities should have in-house mechanisms for monitoring legal complaints lodged against it, and further that corporate entities are obliged to seek reassurances from their insurers that actions are being taken on their behalf after receiving a notice of intent to seek default judgment. **Id.**

Here, Appellant is not an individual, but a corporate entity that has previously been represented by counsel on various matters. **See** Deposition of Iftekhar Biplob, June 19, 2015, pp. 28-29 (explaining Appellant has had multiple attorneys represent it regarding ownership and taxation issues). Appellant makes no claim that it lacked an in-house system for monitoring claims against it. Instead, it explained its system for dealing with claims as one whereby its general manager would forward the claims to its insurance broker – not its insurance carrier – and let the broker handle the claims. As a corporate entity, "[i]t was [] incumbent upon [Appellant] to seek reassurance from its insurer when it received notification of [Appellees'] intent to seek a default judgment." **Flynn**, 674 A.2d at 1103. While Appellant's general manager did write an email to its insurance broker

_____

[13] We further note that **Duckson** involved a delay of only one day.

inquiring about the Mosne matter, Appellant did not forward the default notice[14] and, when it did not receive a response from the insurer, Appellant did not inquire further. Appellant's manager also testified that he would have spoken with Appellant's insurance brokers about this case multiple times on the telephone during the pendency of this matter. These actions do not suffice to satisfy the obligation of a corporate defendant to establish in-house mechanisms to monitor legal complaints lodged against it and then utilize those mechanisms to seek reassurance from an insurer that actions were being taken on its behalf to protect its interests.[15]

Because the trial court properly determined Appellant did not establish all three prongs required to successfully petition to open a default judgment, the equitable concerns underlying this matter do not come into play.[16]

---

[14] The petition to open default judgment claims Appellant did not understand the significance of the default notice.

[15] To the extent Appellant likens itself to the unsophisticated layperson defendant in **Duckson** because its general manager was not an attorney, this argument is unpersuasive as a legitimate reason for the delay. **See** Appellant's Brief, p. 6. Corporations are often managed by non-attorneys. As this Court has explained, corporations run by non-lawyer directors are not excused from the corporate obligation to establish in-house mechanisms to assure its legal interests are attended to by its legal representatives. **See Flynn**, 674 A.2D at 1103.

[16] If they did, however, they would likely lean in Appellees' favor. Appellant's grocery store closed during the pendency of this lawsuit and appeal. As a result, the store employees and other required witnesses may very well be unavailable or difficult to locate, possibly resulting in prejudice to Appellees' case. Appellant's suggestion that the fact Appellees were able to depose its general manager despite the closing of the store indicates the
*(Footnote Continued Next Page)*

The trial court's denial of Appellant's petition to open default judgment does not represent either an abuse of discretion or an error of law. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2016

_(Footnote Continued)_ ————————————

store employee witnesses would still be available for a trial is unpersuasive. At the time Appellees deposed Mr. Biplob, he testified he was still the general manager of Heritage Food of Hazelton, and he described all duties of the position in the present tense. **See** Deposition of Iftekhar Biplob, June 19, 2015, pp. 6-8. Appellees' success in deposing then-employee Iftekhar Biplob does not indicate any success in future attempts to locate employees of a now-defunct grocery store.